**UNITED STATES of America,**

v.

**Elizabeth GUZMAN, Defendant.**

**No. 92–CR–0007A.**

United States District Court,
W.D. New York.

June 8, 1995.

Patrick H. NeMoyer, U.S. Atty., Buffalo, NY (Thomas S. Duszkiewicz, Asst. U.S. Atty., of counsel), for U.S.

James P. Harrington, Buffalo, NY, for defendant.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on July 26, 1994. Defendant filed a motion to suppress evidence.

On January 9, 1995, Magistrate Judge Foschio filed a Report and Recommendation recommending denial of defendant's motion to suppress.

Objections to the Magistrate Judge's Report and Recommendation were filed by defendant. The Government filed a memorandum in opposition to defendant's objections on March 28, 1995. Oral argument on the objections was held on June 6, 1995.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the

parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court denies defendant's motion to suppress evidence.

IT IS SO ORDERED.

## DECISION and ORDER/REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was originally referred to Magistrate Judge Edmund F. Maxwell by order of the Hon. Richard J. Arcara dated January 14, 1992. After preliminary proceedings before Magistrate Judge Maxwell, it came to the attention of the district court that similar issues had been raised in another case before this court. By order dated July 26, 1994, Judge Arcara referred the matter to the undersigned for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for report and recommendation pursuant to § 636(b)(1)(B). It is presently before this court on the Defendant's requests for discovery, an evidentiary hearing and the appointment of an expert witness, and her motion to suppress evidence.[1]

### BACKGROUND

In an Indictment dated January 8, 1992, Guzman was charged with the violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) in that, on or about January 7, 1992, she unlawfully possessed with intent to distribute 500 grams or more of a substance containing cocaine. At a pretrial conference on February 7, 1992, Guzman orally moved to suppress physical evidence. A suppression hearing was held before Magistrate Judge Maxwell on August 24, 1992 and September 21, 1992, at which time the Government presented the testimony of United States Border Patrol Agent Daniel Lorenz, Erie County Sheriff's Depart-

ment Investigator Paul Terranova, and United States Drug Enforcement Administration Agent Bruce Johnson. Following the hearing, Magistrate Judge Maxwell set a briefing and oral argument schedule.

On May 25, 1994, Guzman filed a motion seeking discovery and a hearing on her claim that, at the time of her arrest, she was stopped by Government agents because of her race or ethnic origin. She also sought the appointment of an expert witness. The Government filed its response on July 7, 1994. During an appearance on July 19, 1994, defense counsel advised the court that he wished to withdraw the first suppression motion, based on a purported lack of consent to search Guzman's bag, and to pursue the second. By order filed July 20, 1994, Magistrate Judge Maxwell dismissed Guzman's first motion.

By letter dated October 19, 1994, Guzman framed the factual issues for a hearing on her contention that the stop of her by the agents was unlawfully based on her race or ethnic origin. On October 26, 1994, the Government filed an affidavit stating that no further evidentiary hearing is necessary, and that the documents Guzman seeks do not exist. Additionally, the Government stated that the record supports the factual finding that Guzman was stopped, not because of her race or ethnic origin, but because of her conduct.

For the reasons that follow, the motions for discovery, for a further evidentiary hearing, and for the appointment of an expert witness are DENIED, and the motion to suppress should be DENIED.

### FACTS

In proceedings before Magistrate Judge Maxwell, Investigator Terranova testified that on January 7, 1992, he was assigned to the NFTA bus terminal, and observed a bus from New York City arrive at approximately 8:00 a.m. (T.I. 82, 84).[2] Guzman and a male

---

**1.** The discussion of the first three requests, for discovery, a hearing and the appointment of an expert witness, constitutes this court's Decision and Order in this matter. The discussion of the

motion to suppress constitutes the Report and Recommendation.

**2.** "T.I." references are to the transcript of the evidentiary hearing before Magistrate Judge

passenger were the first to exit the bus, and Terranova observed them walk to the side of the bus, converse for a moment, and enter the terminal. Terranova also stated that the two looked around in a nervous manner, towards the terminal and away from it, and at Terranova and his partner, DEA Agent Bruce Johnson. (T.I. 85–86). Guzman and the male then entered the terminal, and continued to converse and look around the terminal nervously as they walked, very slowly, for a distance of approximately twenty to thirty feet, at which point they separated. (T.I.86). In response to what Terranova considered suspicious behavior, he and Agent Johnson followed the two, and signaled, with a nod of the head, to Agent Lorenz to join them. (T.I.88).

Agent Lorenz testified that he followed Guzman, while Terranova and Johnson approached the male passenger. (T.I.6). He identified himself as a Border Patrol Agent, and asked if he could speak with her. (T.I.7). Guzman agreed, and produced a New York State driver's license as identification. (T.I.7). In response to his questions, Guzman stated that her purpose in travelling to Buffalo was to visit an uncle in Canada, but she was unable to say where in Canada the uncle lived. (T.I.8). Investigator Terranova then joined Agent Lorenz, and asked Guzman if her bag contained narcotics. (T.I.10). She denied that it did, and agreed to accompany the agents to the NFTA police office for a search of the bag. (T.I.10, 93). The subsequent search revealed a quantity of cocaine, packaged in duct tape and wrapped in a blouse, and a bottle of inositol, a cutting agent for cocaine. (T.I.12–14, 97, 99).

Agent Johnson testified that he observed the bus arrive from New York City on January 7, 1992 shortly after 8:00 a.m. (T.II.147). A man and woman, later identified as Hector Huertas and Guzman, were the first two people off the bus, and they proceeded to stand outside, near the front of the bus, quietly conversing for about one minute. They then entered the terminal. (T.II.150). Agent Johnson continue to observe the couple, because they made no attempt to claim luggage from the side of the bus, nor did they immediately enter the terminal on a January morning. (T.II.151).

Johnson testified that, after entering the terminal, Guzman and Huertas walked very slowly down the center aisle, toward the exit, and then separated, with Guzman walking six to eight feet ahead of Huertas. (T.II.152). As they walked separately through the terminal, Guzman looked back at Huertas, and Huertas looked over his shoulder, around the terminal. (T.II.159). Johnson stated that he was suspicious that they were travelling together and were carrying narcotics, based on their conduct after exiting the bus and entering the terminal. (T.II.158).

Agent Johnson testified that the agents make no report when they stop an individual and that person is not arrested. (T.II.179). There are no records on the number of stops made in the transportation centers, or the number involving Hispanic individuals. (T.II.180). Agent Johnson could not say how many black, white or Hispanic persons were arrested at the transportation centers during his years on that detail. (T.II.180). There is no classification for a Hispanic individual on a DEA arrest record. (T.II.179). On the DEA form 6, Agent Johnson classified Guzman as a white female and Huertas as a white male. (T.II.183). There is no criteria that the agents use to determine whom to approach, other than the person's mannerisms, conduct and demeanor, nor any guidelines or regulations to that effect. (T.II.182).

### *DISCUSSION*

#### 1. *Request for Disclosure of Statistical Data*

The defense has requested any and all statistical information regarding the racial and ethnic identity of individuals stopped and/or arrested for narcotics related activities at Buffalo area transportation centers, statistical information regarding the racial and ethnic identity of individuals prosecuted for narcotics related offenses at the transportation centers, and manuals, handbooks or

Maxwell on August 24, 1992. "T.II." references are to the continuation of the hearing on September 21, 1992.

other documents containing policies or practices of federal law enforcement personnel regarding traveller profiles and the engagement of travellers for consensual stops and searches. *See* Defendant's Motion, filed May 25, 1994, at ¶ 45(a)–(c). In response, the Government represents that it "is unaware of the existence of any other material requested by the defendant in the instant moving papers." *See* Government's Response, filed July 7, 1994, at ¶ 9.

The court has reviewed the discovery requests, and concludes that such disclosure is unwarranted. At the evidentiary hearing on the Defendant's suppression motion, Agent Johnson of the United States Drug Enforcement Administration testified that his agency keeps no records of consensual encounters that do not result in arrest and prosecution, and that there are no specific written directives regarding consensual stops of travellers at transportation centers. Additionally, the court is unconvinced that any such further discovery would shed any light on the issues in this case. Having reviewed the testimony of the agents, the court has concluded that race played no part in the stop of Guzman at the bus terminal.

■ Where a defendant presents some evidence tending to establish the essential elements of a selective enforcement defense, and that documents in the possession of the Government may be probative of those elements, discovery may be justified. *See United States v. Berrios*, 501 F.2d 1207, 1211–12 (2d Cir.1974). Implicit in this formulation, however, is that such documents actually exist. Here, the Government denies the information requested by Guzman exists, and Guzman has made no effort to contradict this representation.

In *United States v. Travis*, 837 F.Supp. 1386 (E.D.Ky.1993), the court held that a consensual encounter may not be initiated solely on the basis of race, and requested statistical data on the racial makeup of air travellers generally, and the racial makeup of air travellers approached by law enforcement officers, to determine whether minority travellers were approached in disproportionate numbers when compared with white travellers. If the defendant produced statistical

evidence of such a disparate impact, the burden would shift to the Government to rebut the presumption of unconstitutional action or to identify a compelling government interest for the disparate impact. *Travis, supra*, at 1395. In *Travis*, such a disparate impact was accepted by the court, but the court concluded that the Government sustained its burden of justifying the consensual encounter with the defendant by the use of drug courier profile characteristics and law enforcement information concerning the use of African–American and Hispanic female drug couriers on flights from Los Angeles.

■ Implicit in Guzman's argument is that federal law enforcement agencies conducting drug trafficking interdiction investigations at public transportation facilities are focussing attention on persons of color, including African–Americans and Hispanics, solely because of their color or apparent ethnicity. However, without objective information as to the racial and ethnic profile of travellers or visitors to such facilities, there is no factual basis upon which to conclude that those persons actually stopped by agents, even if predominantly persons of color, are so disproportionate in number compared to the profile of the population of persons actually using a facility as to raise an inference that the decisions to stop such persons are necessarily influenced by the persons' color or apparent ethnicity. Guzman has failed to produce such information or even suggest it exists, at least as to encounters in a bus terminal in Buffalo.

■ Considering the factual circumstances of this case, the court finds, assuming *arguendo* that statistical evidence of such disparate impact could be provided, that it would not result in suppression in this case. Even if the court were to order discovery of relevant statistical information, the existence of which has not been established by Guzman as is her burden, *see Travis, supra*, at 1395, and Guzman were able to present, based upon acceptable statistical analysis, a *prima facie* case of disproportionate impact on minority travellers, the burden would then shift to the Government to rebut the inference of unconstitutional action, or to identify a compelling government interest for the disparate

impact. *See United States v. Travis, supra.* The Government has already put on its proof in this regard, and has sustained its burden and rebutted any possible inference of unconstitutionality by showing race-neutral reasons for the encounter with Guzman. A finding of race-neutral grounds for the encounter renders consideration of alleged due process or equal protection claims unnecessary. *See United States v. Taylor*, 956 F.2d 572, 579 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 404, 121 L.Ed.2d 330 (1992). *Cf. Jones v. United States*, 819 F.Supp. 698, 723 (M.D.Tenn.1993) (investigation of African–American male at airport based on cash purchase of two-way ticket to a drug-source city, with only one and one-half hour interval between arrival and departure, and apparent nervousness failed to establish encounter was racially motivated). As there is no reason to believe the requested statistical data exists, and given that the suppression hearing record shows that Guzman's race or ethnicity was not a motivating factor in the investigator's decision to stop her, the request for further discovery will be futile and is therefore DENIED.

**2. *Request for a Fact–Finding Hearing***

Guzman has also requested a fact-finding hearing to demonstrate that race was the determining factor in the decision to stop and engage her at the NFTA bus terminal on January 7, 1992. She suggests that the following factual issues should be addressed at such a hearing: DEA policies regarding transportation center stops, subjective and objective criteria for such stops, statistics regarding the race and ethnic origin of travellers, persons stopped, persons questioned, persons asked for consent for searches, persons searched, and persons arrested. *See* Letter from James P. Harrington, filed October 28, 1994.

■ An evidentiary hearing was previously conducted on the circumstances of the stop in this case and, following this court's review of that record, it is determined that Guzman was not stopped on the basis of her race or ethnic origin. Agent Johnson's suspicions were drawn to Guzman and Huertas by their conduct after they exited the bus and when they entered the terminal, in that they walked very slowly, looked around the terminal nervously, and separated after they had conversed together outside the bus terminal. Agent Johnson testified that, based on his experience, he was suspicious that the two were travelling together and were carrying narcotics. There is nothing in the record that suggests that the agents were even aware of the ethnic origin of Guzman and Huertas until they began to speak with them. In fact, they were classified as "white" on the DEA arrest forms.

The court concludes that a further fact-finding hearing is unnecessary, as it has determined that Guzman was not selected for further investigation upon arrival in Buffalo based on her race or ethnicity. That record demonstrates, rather, that Guzman and Huertas were approached for further investigation not because of their color but because of their conduct. *See Travis, supra,* at 1395; *see also United States v. Brignoni–Ponce*, 422 U.S. 873, 886–87, 95 S.Ct. 2574, 2582–83, 45 L.Ed.2d 607 (1975) (apparent ethnicity alone not enough to justify a stop, but can be a relevant factor when considered with suspicious conduct). As noted, there is no indication that data on the issue of racially motivated stops by government agents at transportation centers in general, or the NFTA bus terminal in particular, is available or can be made available. Absent such data, the court fails to see how competent statistical analysis and conclusions can be made. Moreover, as noted, the agents testified that there are no specific criteria or guidelines which govern their decision to investigate. Accordingly, the request for a further evidentiary hearing is DENIED.

**3. *Motion for Appointment of Expert Witness***

■ Guzman requests that the court appoint Professor Rosalyn A. Lindner, Chair of the Department of Sociology at the State University of New York College at Buffalo, as an expert witness. Professor Lindner previously provided an affidavit in support of a motion to suppress in *United States v. Archeval–Vega*, 883 F.Supp. 904 (W.D.N.Y. 1994), and, in that case, was of the opinion

that "race was most likely, in and of itself, the primary determinant in the decision to stop and encounter the defendant." *See* Lindner Affidavit, Defendant's Motion, filed May 25, 1994, Exhibit F, at ¶ 10. The court has again reviewed the affidavit of Professor Lindner, resubmitted by Guzman on this motion, and concludes that it provides no information which would cause the court to change its factual findings. Given the finding, as discussed, that a further evidentiary hearing is unnecessary, the appointment of Professor Lindner as an expert witness is likewise unnecessary, and the motion is DENIED.

### 4. *The Motion to Suppress*

Having previously found that the stop of Guzman was not impermissibly based solely on her race or ethnic origin, but rather on the agents' observations of suspicious behavior, the court concludes that suppression based on racial bias of the agents is unwarranted. Moreover, the Defendant has provided nothing in her papers that would suggest a racially discriminatory motive on the part of the agents in this case warranting further fact-finding or a reversal of the court's factual conclusions. Additionally, the court concludes that, even if the Defendant were able to make a *prima facie* showing of a disparate impact on minority travellers, the Government has rebutted the inference of unconstitutional action by showing there were race-neutral reasons for the stop of Guzman. Accordingly, the motion to suppress based on racial bias should be DENIED.

### CONCLUSION

Based on the foregoing, the requests for discovery, a hearing, and the appointment of an expert witness are DENIED, and it is recommended that the motion to suppress on the grounds of racial bias (doc. # 22) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation *must be filed with the* Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.

DATED: January 9th, 1995

Buffalo, New York